**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WINSOME WALLACE,<br><br>    Debtor. | FOR PUBLICATION<br><br>Chapter 13<br><br>Case No. 25-12304 (JPM) |

*APPEARANCES*

**WINSOME WALLACE**
*Pro Se Debtor*
163 East 64th Street
Hollywood, FL 33026
By: Winsome Wallace

**LAW OFFICES OF GABRIEL DEL VIRGINIA**
*Counsel for Kenneth D. Laub*
30 Wall Street, 12th Floor
New York, NY 10005
By: Gabriel Del Virginia

**CHAPTER 13 TRUSTEE**
*Standing Chapter 13 Trustee*
399 Knollwood Rd., Ste. 102
White Plains, NY 10603
By: Thomas C. Frost

**UNITED STATES TRUSTEE**
*Office of the U.S. Trustee, Region 2*
Alexander Hamilton Custom House
One Bowling Green, Rm. 534
New York, NY 10004

## MEMORANDUM OPINION AND ORDER GRANTING RELIEF FROM AUTOMATIC STAY AND *IN REM* RELIEF

JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

I.     **INTRODUCTION**

The debtor Winsome Wallace (the "**Debtor**") commenced this Chapter 13 case *pro se*. Before the Court is the motion of U.S. Bank Trust, N.A. (the "**Bank**") for relief from the automatic stay, dated October 31, 2025 (the "**Motion**"). (Dkt. No. 11.) The Motion additionally seeks *in rem* relief as to the residential property located at 163 East 64th Street, Manhattan, New York (the "**Property**"). (*Id.*)

On December 11, 2025, Kenneth Laub ("**Laub**"), a non-debtor who owns the Property, filed an objection (the "**Objection**"). (Dkt. No. 18.) Laub argues that *in rem* relief is improper because the Property is not owned by the Debtor, and that the Bank has "failed to establish any nexus between the Debtor's filings and any actions taken by" Laub. (*Id.*)

On December 15, 2025, the Bank filed a reply (the "**Reply**"), arguing that Laub and the Debtor colluded in a "scheme to hinder and delay" the Bank's foreclosure, and that *in rem* relief is necessary to protect against "future abusive bankruptcy filings" by Laub. (Dkt. No. 19.) The Bank asserts that "Laub's attempt to 'downplay' his connection with the Debtor" was "disingenuous" given that they have together filed three bankruptcy cases in this District listing the Property as their residence.[1] (*Id.*)

The Court held a hearing on December 18, 2025 (the "**Hearing**"). (*See* Dec. 18, 2025 Hr'g.) At the Hearing, the Bank argued that, even assuming Laub's prior case was filed in good

---

[1] The Debtor filed two Chapter 13 cases, and Laub filed a Chapter 11 case, in this District. References to "Dkt. No. _" are filings in this Chapter 13 case, *In re Winsome Wallace*, No. 25-12304-jpm (Bankr. S.D.N.Y. filed Oct. 17, 2025). References to "Prior Case Dkt. No. _" are filings in the Debtor's prior Chapter 13 case, *In re Winsome Wallace*, No. 25-10088-pb (Bankr. S.D.N.Y. filed Jan. 22, 2025). References to "Laub Case Dkt. No. _" are filings in Laub's Chapter 11 case, *In re Kenneth D. Laub*, No. 23-10689-jpm (Bankr. S.D.N.Y. filed May 2, 2023). Laub's Chapter 11 case was dismissed for cause pursuant to the Court's memorandum opinion and order dated June 4, 2024. (*See* Laub Case Dkt. No. 63.) The Debtor's prior Chapter 13 case was automatically dismissed for failure to file the disclosures and documents required by 11 U.S.C. § 521(a)(1) within 45 days of the petition date. (*See* Prior Case Dkt. No. 17.)

2

faith, the Debtor's two subsequent filings served no purpose other than to frustrate foreclosure to Laub's benefit. (*Id.*) Laub responded that *in rem* relief is an "extraordinary remedy" and that the Bank has not carried its burden of proof. (*Id.*) The Debtor did not appear. (*Id.*)

For the reasons set forth below, the Motion is **GRANTED**.

## II.     BACKGROUND

### A. LAUB'S CHAPTER 11 CASE

Laub purchased the Property in June 1986 and has owned it since then. (Laub Case Dkt. No. 63.) Since 2003, Laub has intermittently marketed the Property for sale through twelve real estate brokers, but has not successfully sold it. (*Id.*)

On April 15, 2005, Laub obtained a $9,000,000.00 mortgage loan from Chevy Chase Bank, F.S.B. ("**Chevy Chase Bank**"), secured by the Property. (Dkt. No. 11, ¶ 4.) The mortgage note was later assigned to Capital One, N.A. ("**Capital One**") on June 16, 2017, following Capital One's acquisition of Chevy Chase Bank. (Laub Case Dkt. No. 63.) Laub stopped making periodic mortgage payments as of December 1, 2016. (*Id.*)

On October 19, 2017, Capital One commenced a foreclosure action in the Supreme Court of the State of New York, New York County (the "**State Court**"). *See Capital One, N.A. v. Kenneth D. Laub*, No. 159315/2017 (N.Y. Sup. Ct. filed Oct. 19, 2017) (the "**Foreclosure Proceeding**"). (Laub Case Dkt. No. 63.) While the Foreclosure Proceeding was pending, Capital One assigned the mortgage note to Wilmington Savings Fund Society, FSB ("**Wilmington**"). (*Id.*)

On October 11, 2022, the State Court found that Laub had defaulted under the mortgage note and entered a judgment of foreclosure (the "**Foreclosure Judgment**") in favor of Wilmington in the amount of $10,653,559.26, plus accrued interest and costs. (*Id.*) A foreclosure sale of the Property was scheduled for May 3, 2023. (*Id.*)

3

On May 2, 2023 – the day before the foreclosure sale – Laub filed a Chapter 11 petition in this District. *See In re Kenneth D. Laub*, No. 23-10689-jpm (Bankr. S.D.N.Y. May 2, 2023) (Laub Case Dkt. No. 1) ("**Laub's Case**"). According to Laub's schedules, in addition to Wilmington's secured claim in the amount of $10,904,179.09, the Property was encumbered by a mortgage held by 163 East 64th Street, LLC in the amount of $5,400,000.00 and a New York city tax lien in the amount of $214,740.04 – totaling $16,518,919.13 in secured claims. (*Id.*)

On November 21, 2023, Wilmington moved to dismiss Laub's Case, arguing that the petition was filed in "bad faith" and that there was "no reasonable likelihood of reorganization due to substantial and continuing loss to the estate." (Laub Case Dkt. No. 35.) On June 14, 2024, the Court granted Wilmington's motion, finding "cause" for dismissal under section 1112(b)(4) based on Laub's insufficient income and inability to propose a confirmable plan. (Laub Case Dkt. No. 63.) Nonetheless, the Court found that Laub had attempted to sell the Property "in good faith," and that the record did not establish the kind of abusive filing conduct that would warrant additional sanctions or prospective relief. (*Id.*) Laub's Case was closed on July 18, 2024.

B.  **THE DEBTOR'S FIRST CHAPTER 13 CASE**

After Laub's Case was dismissed, a second foreclosure sale of the Property was scheduled for January 29, 2025. (Dkt. No. 11.) On January 22, 2025, the Debtor – who claims to be a tenant residing at the Property – filed a Chapter 13 case in this District *pro se*. *See In re Winsome Wallace*, No. 25-10088-pb (Bankr. S.D.N.Y. Jan. 22, 2025) (Prior Case Dkt. No. 1.) (the "**First Case**"). The Debtor listed only one creditor, Capital One, without specifying the amount of the claim. (*Id.*)

A deficiency notice was docketed on the petition date. (Prior Case Dkt. No. 2.) The notice identified numerous missing documents required by section 521(a)(1), including: (1) a statement of monthly income and calculation of commitment period; (2) a model Chapter 13 plan; (3) a

4

certificate of credit counseling; (4) schedules A/B, C, D, E/F, G, H, I, J; (5) a statement of financial affairs; and (6) a summary of assets and liabilities. (*Id.*) The notice indicated that the Debtor had 45 days to cure deficiencies before the case would be automatically dismissed under section 521(i)(1). (*Id.*) The Court scheduled a hearing on automatic dismissal for May 1, 2025. (Prior Case Dkt. No. 9.)

The Debtor failed to cure the deficiencies within the 45-day deadline. Following a hearing on May 1, 2025, the Court dismissed the First Case on May 5, 2025. (Prior Case Dkt. No. 17.)

### C. THE DEBTOR'S SECOND CHAPTER 13 CASE

After dismissal of the First Case, the Property was scheduled for a third foreclosure sale on October 22, 2025. (Dkt. No. 11.) Five days before the scheduled sale, on October 17, 2025, the Debtor filed the instant Chapter 13 case in this District. *See In re Winsome Wallace*, No. 25-12304-jpm (Bankr. S.D.N.Y. Oct. 22, 2025) (Dkt. No. 1.) (the "**Second Case**"). The Debtor again proceeded *pro se*. (*Id.*) Capital One was again listed as the Debtor's sole creditor, without a specific claim amount. (*Id.*)

On October 20, 2025, a deficiency notice was docketed in the Second Case. (Dkt. No. 2.) As in the First Case, the Debtor failed to file the requisite documents, including the statement of current monthly income, the credit-counseling certificate, schedules A/B through J, the statement of financial affairs, and the summary of assets and liabilities. (*Id.*) The deadline to cure those deficiencies was December 1, 2025. (*Id.*)

Also on October 20, 2025, the Debtor sought leave to pay the Chapter 13 filing fee in installments. (Dkt. No. 4.) The Court granted the Debtor's request on November 3, 2025. (Dkt. No. 12.) To date, however, the Debtor has not made any installment payments. The Court has

5

issued notices scheduling a hearing on dismissal for failure to pay installment fees (Dkt. No. 21) and automatic dismissal (Dkt. No. 22) for February 26, 2026.

### D. THE PARTIES' ARGUMENTS

On October 31, 2025, the Bank filed the instant Motion. (Dkt. No. 11.) The Motion seeks: (1) termination of the automatic stay; (2) *in rem* relief as to the Property; and (3) authority to proceed with the Foreclosure Proceeding in State Court. (*Id*.) The Bank advances three principal arguments. *First*, it claims that its lien on the Property is not adequately protected because neither Laub nor the Debtor has made any mortgage payments, which the Bank argues is sufficient to constitute "cause" for lifting the stay under section 362(d)(1). (*Id*. ¶¶ 16-17.) *Second*, the Bank argues that adequate protection is lacking because the Debtor has no equity interest in the Property and the total secured indebtedness exceeds any equity Laub may have. (*Id*. ¶¶ 20-23.) *Third*, the Bank contends that *in rem* relief is warranted under section 362(d)(4) because "multiple filings on the eve of foreclosure alone" is "sufficient to establish a presumption of a scheme to hinder or delay" the Bank, and the Debtor has failed to proffer any evidence to rebut that presumption. (*Id*. ¶¶ 28-30.)

Laub objects, arguing that neither stay relief nor *in rem* relief is appropriate because Laub, not the Debtor, owns the Property. (Dkt. No. 18.) Laub further contends that the Court lacks "jurisdictional basis" to grant *in rem* relief because, in Laub's view, the automatic stay had already expired when the Motion was filed and thus "there is no stay to lift." (*Id*. ¶¶ 1-3.) Specifically, Laub asserts that section 362(c)(3)(A) limits the automatic stay to 30 days for a repeat filer whose prior case was dismissed within a year, and that the Bank's request therefore fails as a matter of jurisdiction. (*Id*.) (citing 11 U.S.C. § 362(c)(3)(A)). Laub also maintains that his Chapter 11 case was filed in good faith and that the Bank has not established a meaningful nexus between Laub

6

and the Debtor – who, he asserts, is neither his spouse nor relative and holds no ownership interest in the Property. (*Id*. ¶ 18.)

The Bank filed the Reply on December 15, 2025. (Dkt. No. 19.) The Bank asserts that the Debtor's filings in both the First and Second Cases were "bare bones petitions" that provided minimal disclosures and included inaccurate information. (*Id*. ¶ 7.) Specifically, the petitions list the Property as the Debtor's residence and identify only a single creditor, Capital One, even though the Bank asserts that the Property is not the Debtor's and Capital One is not the Debtor's creditor. (*Id*.) The Bank further argues that both cases exhibit the same filing deficiencies, none of which the Debtor has shown any willingness to cure. (*Id*.) In the Bank's view, the totality of these circumstances demonstrates that the Debtor filed both cases primarily to benefit Laub and to delay foreclosure, rather than to pursue a Chapter 13 reorganization in good faith. (*Id*.)

### III.    LEGAL ANALYSIS

#### A. RELIEF FROM AUTOMATIC STAY

##### 1. Legal Standard

The threshold issue is whether relief from the automatic stay is warranted. Section 362(d) of the Bankruptcy Code permits a party in interest, "after notice and a hearing," to seek "relief from the automatic stay by terminating, annulling, modifying, or conditioning" the stay. *In re Schuessler*, 386 B.R. 458, 479 (Bankr. S.D.N.Y. 2008) (citing 11 U.S.C. § 362(d)). Under section 362(d)(1), a bankruptcy court may grant relief "for cause, including the lack of adequate protection of an interest in property of such party in interest." *In re Benton*, 662 B.R. 517, 521 (Bankr. S.D.N.Y. 2024) (citing 11 U.S.C. § 362(d)(1)).

Section 361 identifies non-exclusive means of providing "adequate protection," including:

7

(1) requiring the trustee to make a cash payment or periodic cash payment to such entity, to the extent that the stay under section 362 of this title … results in a decrease in the value of such entity's interest in such property;
(2) providing to such entity an additional or replacement lien to the extent that such stay … results in a decrease in the value of such entity's interest in such property; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

Although "cause" is not defined by the Code, courts have held that a debtor's "failure to make mortgage payments" constitutes "cause" to lift the stay and is "one of the best examples of a 'lack of adequate protection' under section 362(d)(1)." *Schuessler*, 386 B.R. at 481; *see also In re Taylor*, 151 B.R. 646, 648 (E.D.N.Y. 1993) ("[A] debtor's failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay."); *In re Tihi Rest. Corp.*, No. 22-11216 (JPM), 2023 WL 1768373, at *2 (Bankr. S.D.N.Y. 2017) (recognizing that "the right to timely payment of rents constitutes an interest in property entitled to adequate protection," and the court may lift the stay for the failure to pay post-petition rent). Courts have also found inadequate protection where the "property's equity cushion" is insufficient. *See In re Boodrow*, 126 F.2d 43, 53 (2d Cir. 1997); *see also In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 207 (3d Cir. 1995) (finding adequate protection where the "value of the collateral available to the creditor exceeds by a comfortable margin the amount of the creditor's claim").

The movant needs only "make a *prima facie* showing that it is entitled to relief from stay." *Schuessler*, 386 B.R. at 479. "Without quantifying the decline in value," the movant "can often establish its *prima facie* case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments." *In re Elmira Litho, Inc.*, 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994). Once the movant establishes a *prima facie* case, the burden shifts to the

8

debtor – or the party opposing relief – to show that cause does not exist to lift the stay. *See Schuessler*, 386 B.R. at 480; *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("While section 362(g) allocates the burden of ultimate persuasion, under either ground, the movant must still make a *prima facie* showing that it is entitled to the relief that it seeks."); *see also* 11 U.S.C. § 362(g) ("[T]he party requesting [stay] relief has the burden of proof on the issue of the debtor's equity in property; and … the party opposing such relief has the burden of proof on all other issues.").

### 2. Cause Exists to Terminate the Automatic Stay

To the extent the automatic stay remains in effect as to the Debtor, the Court agrees with the Bank that "cause" exists to terminate the stay under section 362(d)(1).[2] Here, the record reflects a continuing payment default and the absence of adequate protection. The Debtor has not made post-petition payments to protect the Bank's interest, nor has she proposed any of the protections contemplated by section 361 – such as periodic cash payments, a replacement lien, or other relief providing the indubitable equivalent of the Bank's interest. *See* 11 U.S.C. §§ 361, 362(d)(1); *Schuessler*, 386 B.R. at 481. The Debtor did not file an opposition to the Motion and did not appear at the Hearing to contest the Bank's showing. On this record, the Court finds that the Bank has satisfied its *prima facie* burden. *See Schuessler*, 386 B.R. at 479-80; *Elmira Litho*, 174 B.R. at 903.

Relief is warranted for the additional reason that the Debtor has no apparent equity interest in the Property. The Debtor's own filings and the parties' submissions reflect that the Property is

---

[2] Laub argues that stay relief is unavailable because the automatic stay allegedly terminated under 11 U.S.C. § 362(c)(3)(A). (Dkt. No. 18.) Specifically, Laub contends that, because the Debtor is a repeat filer whose prior case under the same chapter was dismissed within one year, the stay in the instant case is limited to a 30-day period and lapsed by operation of law. (*Id*.) The Bank does not directly respond to Laub's argument. Instead, the Bank maintains that, to the extent any automatic stay remains in effect, it seeks relief from that stay. (Dkt. No. 19.) The Bank further asserts that its request for *in rem* relief is "separate and apart from a request for relief from any stay in this case." (*Id*.) The Debtor filed no opposition, did not appear at the Hearing, and offered no argument in response.

9

owned by Laub, not the Debtor, and that the secured debt encumbering the Property is substantial. (Dkt. No. 11; Dkt. Nos. 18–19.) Absent any evidence to the contrary, the Court finds that the Debtor's case operates principally to delay the Bank's exercise of state-law remedies, while providing no protection for the Bank's lien on the Property. Therefore, section 362(d) relief is appropriate.

The Court rejects Laub's argument that the Motion is moot due to the purported lapse of the automatic stay. In the Objection, Laub asserts that "there is no stay to lift" because section 362(c)(3)(A) limits the automatic stay for certain repeat filers to 30 days after the petition date – a temporary period that, he contends, expired on November 16, 2025. (Dkt. No. 18.) But the Bank filed its Motion on October 31, 2025, while the stay was still in effect. (Dkt. No. 11.) Moreover, assuming the stay did lapse, Laub cites no authority suggesting that a motion filed during the pendency of the stay becomes jurisdictionally defective merely because the stay later lapses.[3] In any event, even accepting Laub's premise, the requested relief is not rendered moot because here the Bank also seeks prospective *in rem* relief independent of the stay relief. (*Id.*)

The Court also notes that courts are divided on the scope of the automatic stay under section 362(c)(3)(A). The statute provides, in relevant part:

> [I]f a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed … the stay under [section 362(a)] with respect to any action taken with respect to a debt or property

---

[3] In the Objection, Laub appears to rely on *In re Bender*, 562 B.R. 578 (Bankr. E.D.N.Y. 2016), for the proposition that the Court lacks a jurisdictional basis to grant stay relief once the automatic stay has terminated under 11 U.S.C. § 362(c)(3)(A). (Dkt. No. 18.) But *Bender* does not frame the lapse of the automatic stay as a jurisdictional defect, nor does it hold that a bankruptcy court is powerless to rule on a stay relief motion merely because the stay has terminated. Rather, *Bender* addressed the scope of section 362(c)(3)(A)'s termination, holding that the stay terminates as to certain proceedings "with respect to" a debt or property securing such debt, without regard to whether the property is property of the estate or of the debtor. *See Bender*, 562 B.R. at 585. In any event, *Bender* is not directly on point. The Bank filed its Motion within the 30-day statutory period while the automatic stay was in effect. Thus, even assuming that the stay lapsed under section 362(c)(3)(A), *Bender* does not support Laub's proposition that the Motion is jurisdictionally barred or otherwise moot.

10

securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case.

11 U.S.C. § 362(c)(3)(A).

A "majority of courts interpret the provision to mean that the automatic stay terminates only with respect to the debtor and the debtor's property, while the automatic stay remains in effect as to the property of the estate." *In re Morgan*, No. 25-30792, 2025 WL 1742435, at *3 (Bankr. N.D. Ohio June 23, 2025); *see also In re Dowden*, 429 B.R. 894, 902-03 (Bankr. S.D. Ohio 2010); *In re Robinson*, 427 B.R. 412, 413-14 (Bankr. W.D. Mich. 2010); *In re Rinard*, 451 B.R. 12, 19-20 (Bankr. C.D. Cal. 2011); *In re Hale*, 535 B.R. 520, 527-28 (Bankr. E.D.N.Y. 2015); *In re Roach*, 555 B.R. 840, 842-48 (Bankr. M.D. Ala. 2016); *In re Smith*, 596 B.R. 872, 878 (Bankr. E.D. Tenn. 2019). "Other courts have held that the termination applies more broadly, ending the automatic stay in its entirety, including as to property of the estate." *Morgan*, 2025 WL 1742435, at *3 (collecting cases). The Second Circuit has not resolved that issue.

In *Sanders*, this Court recently adopted the majority approach, holding that expiration of the 30-day period under section 362(c)(3)(A) terminates the stay only as to the debtor and the debtor's property – not as to property of the estate. *See In re Sanders*, No. 25-12587 (JPM), 2026 WL 184469, at *3 (Bankr. S.D.N.Y. Jan. 23, 2026) (citing *In re Chekroun v. Weil (In re Weil)*, No. 3:12-cv-462, 2013 WL 1798898, at *4 (Bankr. D. Conn. Apr. 29, 2013) (holding that "the stay remains operative … with respect to estate property even after the thirty-day period expires")). But, regardless of section 362(c)(3)(A)'s precise scope, the record reflects a continuing payment default, the absence of adequate protection (including any additional or replacement lien), and a timely filed motion for stay relief while the automatic stay was in effect.

11

Viewing the record as a whole, the Court finds that the Bank has established "cause" under section 362(d)(1), and – to the extent it did not otherwise lapse – the stay is terminated to permit the Bank to proceed in the Foreclosure Proceeding.

### B. *IN REM* RELIEF

#### 1. Legal Standard

Having found "cause" to grant stay relief, the Court next considers whether *in rem* relief is warranted. Section 362(d) grants bankruptcy courts discretion to tailor the stay relief beyond termination or modification in a particular case. *See* 11 U.S.C. § 362(d). "When applicable," section 362(d)(4) "allows the stay modification to include *in rem* relief" – *i.e.*, relief that attaches to the real property itself and is effective against the property in future bankruptcy filings. *In re Buczek*, 653 B.R. 303, 309 (Bankr. W.D.N.Y. 2023).

Under section 362(d)(4), *in rem* relief may be granted where:

[T]he court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such property.

*In re Merlo*, 646 B.R. 389, 393 (Bankr. E.D.N.Y. 2022) (citing 11 U.S.C. § 362(d)(4)).

Section 362(d)(4) is "broad and captures different scenarios of bankruptcy abuse." *Id*. Subsection (A) addresses schemes involving transfers of ownership interests or "other interest[s]" in real property made without court approval or a secured creditor's consent. *Id*. "This subsection only requires the existence of one forbidden transfer," and "the requirement of establishing a scheme would be satisfied unless the debtor could provide a sufficient explanation for the transfer." *In re Mori*, No. 8-22-72742-las, 2022 WL 17096644, at *5 (Bankr. E.D.N.Y. Nov. 21, 2022).

Subsection (B) is the applicable subsection here. Where a creditor alleges multiple filings between a debtor and a related party on the eve of scheduled foreclosure, courts look to the "timing

12

and sequence of filings" and the "good faith prosecution" of the cases. *Merlo*, 646 B.R. at 395 (citing *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009)).

Importantly, a court "need not inquire into fraud if it finds there was hindrance or delay" to creditors. *In re Kearns*, 616 B.R. 458, 467 (Bankr. W.D.N.Y. 2020) (citing *In re Stevenin*, No. 15-10009, 2015 WL 1640475, at *2 (Bankr. D.R.I. Apr. 10, 2015)). A "scheme," for purposes of section 362(d)(4), is "an intentional plan to accomplish a particular result." *In re Anderson*, 594 B.R. 509, 515 (Bankr. D. Me. 2018); *see also In re Behrens*, 501 B.R. 351, 355 (B.A.P. 8th Cir. 2013), *aff'd*, 566 Fed. Appx. 547 (8th Cir. 2014) (defining a "scheme" as "an intentional plan or artful plot").

"A bankruptcy court can 'infer an intent to hinder, delay, and defraud creditors from the fact of the serial filings alone' without holding an evidentiary hearing." *In re Richmond*, 513 B.R. 34, 38 (Bankr. E.D.N.Y. 2014) (quoting *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012)). Courts have "consistently recognized that repeated bankruptcy filings made on the eve of successive foreclosure attempts constitute strong evidence of an intent to delay and hinder secured creditors from collection." *In re Hymes*, No. A12-00599-GS, 2013 WL 653060, at *4 (Bankr. D. Alaska Feb. 20, 2013); *In re Blair*, No. 09-76150-ast, 2009 WL 5203738, at *4 (Bankr. E.D.N.Y. Dec. 21, 2009) ("[T]he mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a permissible inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors.").

Finally, if an order granting *in rem* relief is recorded in compliance with applicable state law, that order "is binding in any subsequent bankruptcy case purporting to affect the subject real property, for a period of 2 years after entry of the order granting *in rem* stay relief." *Kearns*, 616 B.R. at 466-67 (citing 11 U.S.C. § 362(d)(4)). Thus, unlike ordinary stay relief – which is effective

13

"only as to the debtor" – *in rem* relief is "prospective relief that will apply to others who may file bankruptcy petition and invoke the automatic stay as to the same real property." *In re Lord*, 325 B.R. 121, 129 (Bankr. S.D.N.Y. 2005).

### 2. *In Rem* Relief Is Warranted Under the Circumstances

The Court finds that the Bank has sufficiently shown entitlement to *in rem* relief under section 362(d)(4)(B). In *Merlo*, the court granted *in rem* relief where there had been three petitions filed by a debtor and his spouse, and each had been filed a few days before scheduled foreclosure sales. *See Merlo*, 646 B.R. at 393. There, the record reflected that each filing contained serious deficiencies; that neither the debtor nor his spouse appeared at the required section 341 meetings; and that no feasible plan was ever proposed in the second and third cases. *See id*. Based on those facts, the *Merlo* court concluded that the filings were part of a coordinated scheme to hinder and delay the secured creditor from exercising its foreclosure rights. *See id*. at 395-96.

The circumstances that informed *Merlo* are also present here. The record reflects three bankruptcy filings in this District affecting the Property: (1) Laub's Chapter 11 case filed on the eve of a scheduled foreclosure sale; (2) the Debtor's First Chapter 13 case filed one week before the second scheduled sale; and (3) the Debtor's Second Chapter 13 case filed days before the third scheduled sale. (Dkt. No. 11; Prior Case Dkt. Nos. 1, 17; Laub Case Dkt. Nos. 1, 63.) In both Chapter 13 cases, the Debtor filed "bare bones" petitions listing the Property as her residence and identifying only one creditor, while failing to provide the baseline disclosures required by section 521(a)(1). (Prior Case Dkt. No. 2; Dkt. No. 2; *see also* Dkt. No. 19 ¶ 7.) The First Case was dismissed after the Debtor failed to cure the deficiencies within the statutory period, and the Second Case repeated the same deficiencies without a timely cure. (Prior Case Dkt. No. 17; Dkt. No. 2.) The Debtor also sought leave to pay filing fees in installments in the Second Case but has

14

not made any payments to date. (Dkt. Nos. 4, 12, 21, 22.) Furthermore, the Debtor failed to respond to the Motion or to appear at the Hearing on December 18, 2025. Taken together, these facts support a reasonable inference that the filings were deployed merely to invoke the automatic stay to delay foreclosure, rather than to prosecute a Chapter 13 case in good faith consistent with the Code's disclosure and payment requirements. *See Richmond*, 513 B.R. at 38; *see also In re Montalvo*, 416 B.R. at 387 (focusing on "timing and sequence of filings" and the "good faith prosecution" of cases when assessing whether *in rem* relief is warranted).

To the extent Laub argues that the Court "lacks jurisdictional basis" to grant *in rem* relief because the automatic stay already terminated "by operation of law," the Court is unpersuaded. Section 362(d)(4) expressly authorizes prospective relief that is "binding in any other case" affecting the property, including cases filed by third parties. 11 U.S.C. § 362(d)(4); *see also Lord*, 325 B.R. at 129; *In re Abdul Muhaimin*, 343 B.R. 159, 169 (Bankr. D. Md. 2006) (holding that *in rem* relief prevents the debtor and "any other third party with an interest in the property to obtain the benefits provided by the automatic stay in future bankruptcy cases"); *In re Lewis*, No. 16-10352, 2016 WL 2941432, at *3 (Bankr. D.R.I. May 18, 2016) (citing *In re Rodriguez*, 516 B.R. 177, 179 n.2 (B.A.P. 1st Cir. 2014)) ("The effect of … *in rem* relief … is to render the automatic stay … inapplicable with regard to the Property in any future bankruptcy cases[.]"). Laub's position would improperly truncate section 364(d)(4)'s reach and reduce it into ordinary stay relief by making *in rem* relief contingent on the continued existence of the stay in a pending case. That reading is incompatible with the statute's text and purpose: the automatic stay operates case-by-case and binds only the debtor, whereas *in rem* relief exists precisely to provide prospective protection against repeat filings affecting the same property. *See Lord*, 325 B.R. at 129.

15

Moreover, nothing in section 364(d)(4) conditions *in rem* relief on the continued existence of the automatic stay, and courts have granted such relief where the automatic stay had terminated. In *Hernandez*, a bankruptcy court granted *in rem* relief notwithstanding the termination of the stay under section 362(c)(3)(A). *See In re Hernandez*, No. 6:25-bk-03109-GER, 2025 WL 2807839, at *5 (Bankr. M.D. Fla. Sept. 12, 2025). The *Hernandez* court concluded that *in rem* relief could be granted independently of the stay because the statute targets abusive repeat filings affecting the property and bars future invocations of the stay as to the same collateral. *See id*. That reasoning applies with equal force here. Because *in rem* relief operates prospectively and runs with the property, its availability does not hinge on whether the stay remains in effect in the pending case.

Laub's argument that *in rem* relief cannot be granted against a non-debtor is likewise unavailing. Section 362(d)(4) targets abusive "filings affecting" the property, and the remedy runs with the property to prevent future filings – by debtors or non-debtors – from repeatedly invoking the stay against the same collateral. *See* 11 U.S.C. § 362(d)(4); *see also Lord*, 325 B.R. at 129. Laub's contention that the Debtor does not own the Property therefore does not, by itself, preclude *in rem* relief where the record demonstrates multiple bankruptcy filings affecting the Property and a resulting pattern of delay. Nor does the fact that Laub's Chapter 11 Case may have been filed in good faith negate the scheme evidenced by the Debtor's subsequent Chapter 13 filings that mirrored one another, omitted required disclosures, contained filing deficiencies, and were filed on the eve of foreclosure sales. (Dkt. No. 19; Prior Case Dkt. No. 2; Dkt. No. 2.) On this record, the Court finds that *in rem* relief is warranted to prevent future abusive bankruptcy filings affecting the Property.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. It is hereby **ORDERED** that:

1. To the extent the automatic stay is in effect under 11 U.S.C. § 362(a), the automatic stay is modified and terminated pursuant to 11 U.S.C. § 362(d) to permit U.S. Bank Trust, N.A. to proceed with the Foreclosure Proceeding and to exercise its state-law remedies with regards to the Property.

2. *In rem* relief is granted pursuant to 11 U.S.C. § 362(d)(4) as to the Property, and this Order, upon recording in compliance with applicable state law, shall be binding in any other bankruptcy case purporting to affect the Property for a period of two years.

**IT IS SO ORDERED**.

Dated: January 26, 2026
      New York, New York           /s/ John P. Mastando III
                                        HONORABLE JOHN P. MASTANDO III
                                        UNITED STATES BANKRUPTCY JUDGE